UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
CATLIN (FIVE) LIMITED,

        Plaintiff,                       Case No. 08 CV 02776 (RWS)(HP)

    -against-                              **ANSWER**

VERITAS GEOPHYSICAL CORP.,

        Defendant.
-----------------------------------------------------------x

        Defendant VERITAS GEOPHYSICAL CORP. ("Veritas"), by and through its attorneys, Strasburger & Price, LLP, as and for an Answer to the Declaratory Judgment Complaint (the "Complaint") filed by Plaintiff CATLIN (FIVE) LIMITED ("Catlin"), would show the following:

## DEFENSES

### First Defense:

        The Court lacks subject matter jurisdiction over this matter. FRCP 12(b)(1).

### Second Defense:

        Plaintiff fails to state a claim upon which relief can be granted. FRCP 12(b)(6).

### Third Defense:

        Venue is improper as to this Defendant. FRCP 12(b)(3).

### Fourth Defense:

This Court lacks jurisdiction over this Defendant due to insufficient service of process. FRCP 12(b)(4) and FRCP 12(b)(5).

Now pleading further, and responding to the particular allegations contained in Plaintiff's Original Complaint, Defendant responds as follows:

## ADMISSIONS AND DENIALS

1. Veritas admits that Catlin has filed this action under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2. Veritas admits that the issues raised by Catlin in the Complaint constitute questions of insurance coverage under an excess liability insurance contract.

3. Veritas admits that the subject matter of this dispute is a particular contract of excess liability insurance bearing No. B0738CG000540A (the "Policy"). Veritas admits that the Policy was issued to, *inter alia*, Defendant Veritas. Veritas can neither admit nor deny the identities of the specific syndicates that underwrite the Policy (the "Subscribing Underwriters"). Veritas can neither admit nor deny that a true copy of the Policy is annexed to the Complaint as Exhibit A.

4. Veritas can neither admit nor deny that the Policy was issued on a several and not joint basis by the Subscribing Underwriters. Veritas can neither admit nor deny that Syndicate 2020 underwrote 20% of the risk.

5. Veritas can neither admit nor deny that, under the terms of the Subscription Agreement, Syndicate 2020 was designated as the "Slip Leader".

6. Veritas can neither admit nor deny that the Subscribing Underwriters, with the exception of Catlin, are not parties to the instant declaratory judgment action. Veritas can neither admit nor deny whether Catlin is a member of Syndicate 2020.

7. Veritas denies that an actual controversy of a justiciable nature exists between Catlin and Veritas involving the rights and obligations under the Policy.

8. Veritas can neither admit nor deny that Catlin was and is a corporation duly organized and existing under and by virtue of the laws of the United Kingdom, with a principal place of business located at 3 Minster Court, Mincing Lane, London, England. Veritas can neither admit nor deny that Catlin was formerly known as Wellington (Five) Limited.

9. Veritas can neither admit nor deny that, at all times relevant, Catlin was in the business, through a managing agent, of subscribing to and underwriting insurance contracts or policies, including, but not limited to, excess liability insurance contracts or policies.

10. Veritas can neither admit nor deny that Catlin is a member of the Syndicate 2020, and in that capacity is a contracting party to the Policy.

11. Veritas can neither admit nor deny that, at all times relevant, Catlin Underwriting Agencies, Limited ("Catlin Agency") was and is the managing agent for Catlin.

12. Veritas admits that Catlin Agency is not a party to this litigation.

634592.1/SPH/13623/0110/051408

13.  Veritas can neither admit nor deny that Catlin Agency is the managing agent of Syndicate 2020 and/or that Catlin Agency has bound all members thereof to the outcome of this declaratory judgment action. Veritas admits that no member other than Catlin is a party to this litigation.

14.  Veritas can neither admit nor deny that all Subscribing Underwriters have consented to be bound by the outcome of this declaratory judgment action. Veritas admits that no member other than Catlin is a party to this litigation.

15.  Veritas admits that, at all times relevant, Veritas was and is a corporation duly organized and existing under and by virtue of the laws of the State of Texas, together with a principal place of business located in Texas and a principal mailing address at 10300 Town Park Drive, Houston, Texas.

16.  Veritas admits that, at all times relevant, Veritas did and does conduct business in the State of Texas.

17.  Veritas admits that, at all times relevant, Veritas represented to the Subscribing Underwriters that it was in the business of offering the oil and gas industry a comprehensive sweep of integrated geophysical services designed to manage exploration risks and enhance drilling and production success worldwide.

18.  Veritas can neither admit nor deny that there is complete diversity of citizenship between Catlin and Veritas, and can neither admit nor deny that Catlin is a citizen or subject of the United Kingdom with its principal place of business in London, England. Veritas admits that Veritas is a citizen of the State of Texas with its principal place of business in Houston, Texas.

19. Veritas denies that the amount in controversy between Catlin and Veritas exceeds the sum of $75,000. Veritas admits that, in the event that liability is found in this action to exist under the Policy, Catlin may be required to pay in excess of that amount for the Underlying Action, as hereinafter defined, exclusive of interest and costs.

20. Veritas denies that this Court has subject matter jurisdiction of this dispute under 28 U.S.C. § 1332(a)(2).

21. Veritas admits that, in and by the terms of the Policy, Subscribing Underwriters and Veritas agreed that the Policy "shall be governed by and construed in accordance with the law of New York." Veritas further admits that Subscribing Underwriters and Veritas agreed that "each party submit to the exclusive jurisdiction of the Courts of New York."

22. Veritas admits that, on or before August 1, 2006, the Subscribing Underwriters issued the Policy to, *inter alia*, Veritas, and that the Policy provided coverage for excess liability on a "claims made" basis. Veritas can neither admit nor deny whether the Subscribing Underwriters issued the Policy on a several, but not joint, basis.

23. Veritas admits that the available coverage under the Policy, subject to the full terms and conditions thereof, was and is "[t]o indemnify the Insured for their legal liability to third parties for bodily injury or property damage caused by an occurrence in connection with the Insured's operations."

24. Veritas admits that the Policy has a per claim limit of $100,000,000.00, excess underlying policy of a $1,000,000.00 with regard to the below identified claim by Jerry Baxter.

25. Veritas admits that the language of the Policy quoted by Catlin is accurate.

26. Veritas admits that it has reported to Subscribing Underwriters that on or about March 18, 2005, Veritas contracted with Maxim Crane Rental ("Maxim") for Maxim to move four (4) forty foot cargo containers from Veritas's Town Park facility to the Westpark Storage lot in Texas.

27. Veritas admits that it has reported to Subscribing Underwriters that on or about March 18, 2005, Maxim arrived at the jobsite to perform the movement of the cargo containers.

28. Veritas admits that it has reported to Subscribing Underwriters that Jerry Baxter was an employee of Maxim who was assigned to this movement of the four (4) containers.

29. Veritas admits that it has reported to Subscribing Underwriters that during the performance of Maxim's obligations under the contract with Veritas that Jerry Baxter, in the due course of his performance of services on behalf of Maxim for the benefit of Veritas, fell from the top of one of the four (4) containers to the concrete surface below.

30. Veritas admits that it has reported to Subscribing Underwriters that as a result of the fall from the top of one of these four (4) containers, Jerry Baxter

suffered fractures on both legs which eventually led to the total knee replacement of both knees.

31.　Veritas admits that it has reported to Subscribing Underwriters that on or about April 7, 2006, Jerry Baxter filed a petition for pre-suit discovery. Veritas further admits that Jerry Baxter filed a lawsuit for damages on or about October 4, 2006.

32.　Veritas admits that it has reported to Subscribing Underwriters that on or about October 4, 2006, Baxter filed a lawsuit against, *inter alia*, Veritas to recover damages. Veritas denies that the damages currently claimed by Baxter are estimated to be in excess of $3,000,000.00. Veritas admits that a true copy of the Plaintiff's First Amended Original Petition is annexed to the Complaint as Exhibit B.

33.　Veritas denies that Subscribing Underwriters were first notified of Jerry Baxter's claim and lawsuit on May 11, 2007.

34.　Repeats and reasserts the positions set forth in 1-33, above.

35.　Veritas admits that, as one of four (4) alternative conditions precedent for the attachment of coverage under the Policy, Veritas must have received first notice of a "claim", as defined by the Policy, during the period of coverage of the Policy between August 1, 2006 to August 1, 2007.

36.　Veritas denies that it received first notice of a "claim", as defined by the Policy, no later than April 18, 2006. Veritas admits that the date of April 18, 2006 predates the attachment of coverage of August 1, 2006 under the Policy.

37. Veritas denies that coverage did not attach for the Baxter claim under Section I, subsection (a) of the Policy.

38. Repeats and reasserts the positions set forth in 1-37, above.

39. Veritas admits that, as one of four (4) alternative conditions precedent for the attachment of coverage under the Policy, Veritas was required to give written notification of the accident underlying the Baxter claim, which notification was to be received by the Subscribing Underwriters within ninety (90) days of such accident.

40. Veritas admits that the underlying accident involving the claimant Jerry Baxter took place on March 18, 2005.

41. Veritas denies that it provided first notice of the Baxter claim to the Subscribing Underwriters on or about May 11, 2007.

42. Veritas denies that, by virtue of the foregoing, coverage did not attach for the Baxter claim under Section 1, subsection (b) of the Policy.

43. Repeats and reasserts the positions set forth in 1-42 above.

44. Veritas admits that, as one of four (4) alternative conditions precedent for the attachment of coverage under the Policy, Veritas was required to provide written notification of the discovery of its involvement in the accident underlying the Baxter claim which consists of unintended fire or explosion; lightning; impact of aircraft, automobile, railroad, locomotive or rolling stock; impact, capsize or sinking of watercraft; within ninety (90) days of such discovery.

45. Veritas denies that it first discovered the Baxter claim on or about March 18, 2005. Veritas further denies that it discovered the Baxter claim no later than April 18, 2006.

46. Veritas denies that it did not provide first notice of the claim to the Subscribing Underwriters until May 11, 2007, but admits May 11, 2007 is more than ninety (90) days beyond Veritas's discovery of the Baxter claim.

47. Veritas denies that coverage did not attach for the Baxter claim under Section 1, subsection (c) of the Policy.

48. Repeats and reasserts the positions set forth in 1-47, above.

49. Veritas admits that, as one of four (4) alternative conditions precedent for the attachment of coverage under the Policy, Veritas was required to give written notification of the discovery of Bodily Injury to a named individual person arising out of an accident, and that notification was to be received by the Subscribing Underwriters within ninety (90) days of such discovery.

50. Veritas admits that it either knew of the injury to the named individual, Jerry Baxter, on or about March 18, 2005, the date of the accident, or at the very latest when Veritas gave first notice of claim to AIG on April 18, 2006.

51. Veritas denies that it did not provide first notice of claim to the Subscribing Underwriters until May 11, 2007. Veritas denies that any ninety (90) day period is required with respect to the notice of a claim, as defined by the Policy. Veritas denies that first notice of the claim was after the expiration of the ninety (90) day period required for coverage to attach to the Baxter accident under Section 1, subsection (d) of the Policy.

52.     Veritas denies that, by virtue of the foregoing, coverage did not attach under Section I, subsection (d) of the Policy.

53.     Repeats and reasserts the positions set forth in 1-52, above.

54.     Veritas admits that Section II, item 3 of the Policy, entitled "Notice of Claim", states that "[p]rompt notice must be given to Underwriters whenever the Insured has information that a claim [as defined by the Policy] ... may deplete by 50% or more the underlying amount or each accident amount or each accident retention, whichever is greater."  Veritas admits that the underlying amount of insurance with respect to the Baxter claim is in the sum of $1 million.

55.     Veritas admits that it had notice of an injury to Jerry Baxter on or about the date of the accident, March 18, 2005.  Veritas denies that it had notice that the injury was "serious" at that time.

56.     Veritas admits that, after the accident on March 18, 2005, Jerry Baxter was diagnosed with having sustained two (2) broken legs.  Veritas further admits that Jerry Baxter ultimately required two (2) knee replacement surgeries.  Veritas admits that Baxter alleges that, because of his life expectancy, he may require a second replacement.

57.     Veritas denies that, on or before January 2007, the cost of the medical treatment to Jerry Baxter depleted the underlying insurance by a minimum of 50%, and further denies that this triggered any obligation of Veritas to provide prompt notice of claim to Subscribing Underwriters for the Baxter claim.

58. Veritas denies that it was required to provide prompt notice of a claim to the Subscribing Underwriters no later than January 2007. Veritas denies that it did not provide notice of the Baxter claim to Subscribing Underwriters until May 11, 2007.

59. Veritas denies that it has violated a condition subsequent for coverage under the Policy by providing untimely notice of the Baxter claim to the Subscribing Underwriters.

60. Veritas denies that the Subscribing Underwriters have no liability for the Baxter claim under the Policy because of allegedly untimely notice provided by Veritas.

61. Veritas denies that Catlin is entitled to the relief sought in its prayer.

**WHEREFORE**, Defendant VERITAS GEOPHYSICAL CORP. asks this Court to dismiss the complaint and enter judgment in favor of Defendant.

Dated:   Dallas, Texas
         May 14, 2008

                                                STRASBURGER & PRICE, LLP
                                                *Attorneys for Defendant*
                                                VERITAS   GEOPHYSICAL   CORP.

By: _____
     Michael A. Walsh (MW-2534)
     330 Madison Avenue, 9th Floor
     New York, New York 10017.5002
     646.495.5096 tel
     646.495.5097 fax
     Email: michael.walsh@strasburger.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 14th day of May, 2008, a true and correct copy of the foregoing was served on all known counsel of record via ECF filing.

_____
MICHAEL WALSH

634592.1/SPH/13623/0110/051408